IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

MARGARET A. TORRES-RIVERA
GUADALUPE GOMEZ-CORA
ERNID M. GOMEZ-TORRES
TALINA A. FERNANDEZ-TORRES
ANGEL L. SANTIAGO-CORA
and RAMONA CORA-HUERTAS

Plaintiffs

vs

ERNESTO ESPADA-CRUZ
CHARLES O'NEILL-CANCEL
and JOHN DOE and RICHARD ROE,
as yet unidentified state government officers, in
their individual capacities

Defendants

CIVIL 99-1972CCC

# O R D E R

This action is now before us on plaintiffs' Motion for Reconsideration of this Court's Order on Motion for Attorneys' Fees filed August 11, 2006 (**docket entry 184**), which was opposed by defendant O'Neill-Cancel (**docket entry 187**). Having considered the motion and the opposition, the court hereby revises its award of attorney's fees, expressing the lodestar calculations, used but not elaborated in its previous opinion, as well as revising some of the specific deductions.

The events giving rise to this action and the travel of the case appear in our previous order and we do not repeat them here. For the reasons stated in that opinion, attorney Cerda will be compensated at the same hourly rate as that requested by attorney Irizarry–$200.00[1]– and will not be compensated for travel time between Chicago and Puerto Rico. Similarly, our comments regarding lack of docket numbers, titles, or reference to subject matter, and general vagueness making the review and evaluation of the time sheet entries difficult remain. Counsels' intercalation of their time sheets adds one more stumbling block to sorting the requested fees.

The instruction for filing jury instructions included in the Case Management Order states, in relevant part:

---

[1] See, also, Zayas v. Commonwealth of Puerto Rico, 451 F. Supp. 2d 310,319 (D. Puerto Rico 2006) which identifies $200.00 as being within the higher range of prevailing rates in Puerto Rico, while the paralegal rate is identified at $50.00.

> Proposed Voir Dire and Jury Instructions
>
> The basic voir dire and jury instructions are, in general, prepared by the Court. The parties shall not submit instructions of the type that are ordinarily used in every case. They shall submit only special instructions that they believe necessary for the specific facts of their case. Instructions should be carefully reviewed prior to submission. The court is not interested in receiving a panoply of possible suggested instructions from which to choose, for each point. One for each specific point will suffice....

(Emphasis in the original.) Plaintiff submitted a total of 12 proposed jury instructions, (docket entry 112), of which at least six are regularly used in civil rights damage cases. Of the 12, six were forms from Federal Jury Practice and Instructions (Civil), Levitt, Blackman and Wolff, 4th Edition.[2] Similarly, only a proportion of the proposed voir dire, (docket entry 113) approximately nine[3] of the 28 questions, addressed matters tangentially relevant to the case; the remainder was made up of standard questions asked by the court in its general voir dire or special voir dire, or which are inappropriate and would not be given at all. We therefore find the time claimed for researching and preparing jury instructions and voir dire excessive and unnecessary.

Generic descriptions for task entries, e.g. "Telephone call," "Review court order," "review correspondence," and "prepare correspondence," "work on brief," "review of documents" and "conduct legal research" provided no guidance to the court in evaluating the requested fees. Where generic entries have been included with more detailed ones, we have treated the entire entry as a block billing.

"Block billing" can be defined as the time-keeping method by which an attorney lumps together the total daily time spent working on a case, rather than itemizing the time expended on specific tasks. Robinson v. City of Edmond, 160 F.3d. 1275, 1283, fn.9 (10th Cir. 1998); Harold Stores, Inc. v. Dillard Dep't Stores, Inc., (82 F.3d. 1533, 1554 n.15 (10th

---

[2] Individualized instructions which were, for the most part, very short, included #5, a summary of the claims; #6 no specific intent; #8 failure to intervene; #9 elements of assault; #10 duty to protect.

[3] Questions 9, 10, 13, 14, 15, 19, 23, 28 and 29.

Cir. 1996). See, also, Institute for Wildlife Protection v. Norton, 2006 WL 1896730,*2 (W.D.Wash.); Defenbaugh v. JBC &Associates, Inc., 2004 WL1874978 (N.D.Cal.). This practice can make it impossible for the court to determine the reasonableness of the hours spent on each task; more so, when the generic labels are used and we cannot determine whether the tasks are related or which matters the "calls" or "correspondence" address. While block billing creates impediments to the analysis of attorney's fee bill, the Supreme Court has indicated that it is not a basis for refusing to award attorneys' fees. Trulock v. Hotel Victorville, 92 Fed. Appx. 433, 434 (9th Cir. 2004), citing Henley v. Eckerhart, 461 U.S. 424 (1983). Robinson succinctly expresses the concerns about block billing:

> The use of billing practices that camouflage the work a lawyer does naturally and quite correctly raise suspicions about whether all the work claimed was actually accomplished or whether it was necessary. This concern is particularly important in a situation where a party is seeking to have his opponent pay for his own lawyer's work.... [A] district court does not abuse its discretion in reducing a plaintiff's fee request when the request is based on time records that are"rather sloppy and imprecise." We have always required lawyers to keep "meticulous time records that ' reveal . . . all hours for which compensation is requested and how those hours were allotted to specific tasks.'"

(Robinson, supra, at pp.1284-85.)

A review of the case law reflects that the method most often used to compensate for block billing is a flat reduction of a specific percentage from the award. See, e.g., Delgado v. Village of Rosemont, 2006 WL 3147695 (N.D.Ill.) (reduction of total fees by 35% for vagueness, block billing and lack of detail);[4] Phoenix Four, Inc., v. Strategic Resources Corporation, 2006 WL 2135798 (S.D.N.Y.) (fee award reduced by25% for block billing); Association of Holocaust Victims for Restitution of Artwork and Masterpieces v. Bank Austria Creditanstalt, 2005 WL 3099592, at*7 (S.D.N.Y.); (reduction of award by 25% for block billing, excessive hours, and vagueness in time entries); Sea Spray Holdings, Ltd. v. Pali Financial Group Inc., 277 F. Supp. 2d 323, 326 (S.D.N.Y. 2003) ("because of . . . the inherent

---

[4]David Cerda was the lead attorney in Delgado case. That court struggled with the same difficulties that we face here.

difficulties the court would encounter in attempting to parse out reasonable hours and manpower for appropriate tasks, the court finds that a 15% "flat reduction of fees . . . is warranted.")[5]

As a final note, we have reduced the hourly rate from $175.00 to $50.00[6] for David Breed, Cerda's paralegal. We also eliminated 5.1hours billed, inasmuch as some of the tasks were clearly clerical in nature. Paralegal work can only be recovered as attorney's fees if the work is legal rather than clerical. <u>Vela v. City of Houston</u>, 276 F.3d. 659, 681 (5th Cir. 2001). Other block entries include a mix of clerical and legal tasks.

Applying the criteria set out above, attorney fees are awarded as follows:

| | | |
|---|---|---|
| David A. Cerda | 287 hours @ $200.00 per hour = | $57,400.00 |
| Sigfredo Irizarry | 290.4hours @ $200.00 per hour = | $58,480.00 |
| David Breed | 49.10hours @ $50.00 per hour = | $ 2,455.00 |
| Total of attorney's fees awarded | | $118,335.00 |
| Less 15 % discussed above | | $ 16,750.55 |
| Total attorney's fees allowed | | $101,584.45 |

Co-defendant Ernesto Espada-Cruz was served with summons and complaint on September 28, 1999 (<u>see</u> docket entry 8). On December 13, 1999 he filed a motion informing the court that the Commonwealth Department of Justice had not granted him the benefits of Puerto Rico Law 9, 32 L.P.R.A. §3085-3092.[7] Espada-Cruz did not answer the

---

[5]June 7, 2000–1 hour to draft a one sentence, four-line motion for default judgment; December 29, 2000–1 hour to read an <u>amended</u> statement of eight uncontested facts; June 19, 2002–3 hours to prepare and file a half-page cover letter with a photocopy of an expert witness' curriculum vitae;

[6]<u>See</u>, n.1, <u>supra</u>.

[7]§3085states, in pertinent part:
>Every . . . employee . . . of the Commonwealth of Puerto Rico who is sued for damages in his personal capacity, when the cause of action is based on alleged violations of the plaintiff's civil rights, due to acts or omissions committed in good faith, in the course of his employment and within the scope of his functions, may request the Commonwealth of Puerto Rico to provide him with legal

CIVIL 99-1972CCC                                           5

complaint and default was entered against him on June 19, 2000 (docket entry 26). Defendant O'Neill, on the other hand, was granted the benefits under Law 9. The indemnification provision of §3085 does not comprise a waiver of Eleventh Amendment sovereign immunity. Ortiz-Feliciano v. Toledo-Dávila, 175 F.3d. 37 (D. Puerto Rico 1999). In light of the fact that the damages were assessed against the defendants individually, and that to adjudicate payment of all the attorney's fees jointly would place the burden of payment of the fees on the Commonwealth through its commitment to O'Neill, notwithstanding its denial of the benefits to Espada-Cruz. We therefore apportion the attorney's fees between the defendants according to the culpability of and damages caused by each defendant, as determined by the jury's award. See, generally, Grendel's Den, Inc. v.Larkin, 749 F.2d 945, 959-60 (1st Cir. 1984) (a district court has wide discretion on how to divide liability for attorney fees.); José P. V. Ambach, 669 F.2d 865, 871(2nd Cir. 1982). See, also, Koster v. Perales, 903 F.2d 131, 139 (2nd Cir. 1990) (abrogated on other grounds); Swan v. Daniels, 917 F.3d. 292, 301(D.Delaware 1995).

The court asked the jury to determine the specific damages caused by each defendant, separately, as to each claim, rather than a global sum from both defendants. Of the $340,000.00 awarded in damages, slightly more than one third–$100,000.00 for Gómez-Torres and $20,000.00 for Torres-Rivera–for failing to intervene and as a consequence of negligent acts and omissions, respectively, was attributed to O'Neill. $220,000.00 of the damages awarded against Espada-Cruz was for use of excessive force in violation of the Fourth Amendment against Gómez-Torres and Angel Santiago-Cora and for consequences of his

---

representation, and to subsequently assume the payment of any judgment that may be entered against his person....
   Likewise, these provisions shall not be construed . . . as a waiver of the sovereign immunity of the Commonwealth.

(Official translation.)

negligent acts and omissions against Torres-Rivera.  Accordingly, defendant O'Neill shall pay 35 % of the attorney's fees, or $35,554.56 and Espada-Cruz will be held liable for 65% or $66,029.89.

The action is referred to the Clerk of Court for the calculation of allowable costs.

SO ORDERED.

At San Juan, Puerto Rico, on February 23, 2007.

                                        S/CARMEN CONSUELO CEREZO
                                        United States District Judge